UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. |
| ) | 05 − 10176 − RCL |
| BRANDON DELGADO ) | |

**DEFENDANT BRANDON DELGADO'S MOTION FOR FURTHER DISCOVERY PURSUANT TO RULE 16(a)(1)(E) AND (F) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE AND LOCAL RULES 116.1, 116.2 AND 116.6**

  The government has produced for the defendant documents and audio and video tapes or disks and has provided other information that it is required to disclose under LR 116.1 and LR 116.2. The government contends that it has produced all discoverable information currently subject to disclosure under LR 116.1 and LR 116.2 (B)(1). The government has invoked LR 116.6 and declined to identify a cooperating witness or provide discovery that would identify that witness. The defendant Brandon Delgado ("Delgado") moves for further discovery as follows:

  1. The government has produced documents reflecting the recovery or seizure of a firearm and ammunition and of particular quantities of cocaine powder or cocaine base generally packaged in plastic bags. With respect to the narcotics, the discovery included copies of receipts reflecting a transfer of the alleged drug packages from an ATF agent to a member of the New Bedford police department and subsequent Commonwealth of

1

Massachusetts chemical analysis reports. Other than handwritten numbers on some of the chemical reports matching handwritten notes on some of the initial receipts there is no way to mach a report with a particular alleged transaction. The handwritten notes are of unknown origin. Moreover, there is generally a relatively substantial gap between the date of the original receipt and the date of submission to the chemist and there are no documents reflecting any intervening chain of custody. The chemist's report is a one page document with a conclusion that the substance examined contained either cocaine or cocaine base. There is no underlying report of precisely what tests were done and what other information was obtained from the tests.

With respect to the firearm and ammunition, the government has produced a document indicating the placement of the firearm and ammunition in a vault five days after their seizure and a removal on the same date for "fingerprinting." There are subsequent reports of firing tests and analysis for interstate movement, but there are no reports of any fingerprint analyses or attempted analyses. There are no documents reflecting any chain of custody of the firearm or ammunition.

Delgado requests discovery of (a) all documents recording or evidencing the chain of custody of all drugs and all drug packaging recovered or otherwise seized; (b) all documents that will match the drugs seized or recovered to the drugs tested; (c) all documents recording or evidencing the chain of custody of the firearm or ammunition seized in the course of the search; (d) all documents reflecting any fingerprint testing or attempt to perform fingerprint testing on any of the drug packages, the firearm, or the ammunition and all documents recording or evidencing a decision not to perform any such fingerprint testing; (e) the results of any

2

fingerprint testing or attempt not reflected in any document; and (f) all documents, other than the final reports already produced, reflecting any information obtained as the result of any of the drug testing or analysis.

    2. The government investigation involved a cooperating witness with whom Delgado allegedly made most of the drug transactions that are the subjects of the indictment.  LR 116.2(B) requires early production of certain exculpatory information including the criminal records of, and any promises or rewards to, government witnesses.  Delgado is fully aware of the identity of the cooperating witness.  Indeed, in a tape the government produced a government agent accidentally called the witness by his rather uncommon first name.  The government has refused to identify the witness, having invoked LR 116.6.  As a result, identifying information, including case numbers, have been redacted from the witness's substantial criminal record.  This renders the "criminal record" useless.  Moreover, the government's disclosure of promises and rewards is plainly incomplete.  Although there has been disclosure that the witness had an agreement with ATF and has received money payments there is no disclosure of the dates, the source, or the amounts of such payments either from ATF or the New Bedford Police.  Counsel for Delgado is informed and believes that an ATF cooperation agreement is preceded by a written application from the person who intends to cooperate and that ATF also requires written documentation of payments made.

    Delgado requests discovery of (a) of the complete criminal record of the cooperating witness, including docket numbers, to permit access to the record file; (b) all documents reflecting the date, source and amount of any payment made to the cooperating witness at any time, whether the payment was made by ATF or some other arm of the federal government or by any

other law enforcement agency; and (c) any document constituting or evidencing any application by the cooperating witness to act in such capacity.

    3. The government has produced numerous Reports of Investigation (ATF EF 3120.2) reflecting alleged contacts with Delgado by the cooperating witness or a government undercover agent. The reports are reasonably contemporaneous with the alleged contacts and often refer to the content of alleged communications with Delgado. In most instances, the contacts were recorded. The government has also produced portions of two "ATF Operational Plans," (ATF 3210.7), one dated January 7, 2005 and one dated January 20, 2005, that refer to an alleged contact between the cooperating witness and Delgado and concern Delgado's alleged possession of a firearm. These two ATF Operational Plans do not identify the agent or agents who wrote the plans. Finally, the government produced a Report of Investigation, not prepared until September 13, 2005, several months after Delgado was arrested, describing an alleged contact between the cooperating witness and Delgado involving a firearm and occurring prior to January 7, 2005. This Report includes an alleged telephone conversation between Delgado and the cooperating witness on January 7, 2005, involving a firearm. This was the date of the earlier of the "Operational Plans." The call was not recorded but the government alleges that an ATF agent as well as a New Bedford Police officer were listening in on the conversation. The government asserts that Delgado stated that he was not willing to sell his firearm because he needed to keep it for himself. The government has not produced any contemporaneous report of this alleged incident or conversation.

Delgado requests discovery of (a) the identity of the author or authors of the two ATF Operational Plans; (b) any documents, noting, recording or evidencing the telephone conversation or the content of the telephone conversation alleged to have occurred on January 7, 2005 between Delgado and the cooperating witness; and (c) any documents, including "ATF Operational Plans," recording or evidencing any law enforcement attempt to obtain any firearm from Delgado after January 7, 2005.

By his attorney,

s/Michael J. Liston

_____
Michael J. Liston BB0# 301760
2 Park Plaza, Suite 610
Boston, MA  02116
(617) 426-2281

Dated:  November 28, 2005