# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                          )
**UNITED STATES OF AMERICA**              )
                                          )
                                          )
            **v.**                        )     **CRIMINAL NO.**
                                          )     **05 − 10176 − RCL**
**BRANDON DELGADO**                       )
                                          )
_____)

### DEFENDANT BRANDON DELGADO'S MOTION FOR APPOINTMENT OF COUNSEL AND MOTION FOR REDUCTON OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) AND U.S.S.G. § 1B1.10, AS AMENDED

The defendant Brandon Delgado ("Delgado") moves that undersigned counsel, who represented him by appointment in the prior proceedings in this case and who continues to be a member of the Criminal Justice Act Panel, be appointed to represent him in this Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 and Delgado further moves that his sentence be reduced.

**BACKGROUND**

On June 7, 2006, Delgado pleaded guilty to 8 counts of a superseding indictment which charged him with the substantive crimes of possessing with intent to distribute and distributing either cocaine base or powder cocaine in violation of 21 U.S.C. § 841(a)(1).   Counts 1 through 3 involved cocaine base in the aggregate amount of 6.24 grams.   Counts 4 through 8 involved cocaine powder in the aggregate amount of 11.67 grams.

Delgado was sentenced on October 4, 2006, under the then applicable guidelines. Because Delgado's offenses involved both cocaine base and powder cocaine, the Probation Office calculated his guideline offense level in accordance with the drug quantity tables found at guideline §2D1.1(c) and the drug equivalency tables set forth in Application Note 10 of the Commentary to §2D1.1 in effect at the time of the 2006 sentencing. Those equivalency tables translated each gram of cocaine base into 20 kg of marijuana and each gram of cocaine powder into 200 grams of marihuana. Thus Delgado's 6.24 grams of cocaine base was the equivalent of 124.8 kg of marihuana and his 11.67 grams of powder the equivalent of 2.334 kg of marihuana for a total marihuana equivalency of 127.134 kg. See PSR ¶ (23).

Under the 2006 §2D1.1(c) drug quantity table, marihuana amounts of at least 100 kg but less than 400 kg produced an offense level 26. Delgado's offense level was plainly driven by the cocaine base quantity and not at all affected by the powder quantity. See PSR ¶¶ (23) and (24). Under the then applicable guidelines, quantities of cocaine base of at least 5 grams but less than 20 grams would also produce offense level 26. Indeed, that same offense level, level 26, would have applied even if both the base – 6.24 grams – and the powder – 11.67 grams – had been counted as entirely cocaine base.

Delgado's offense level was increased two levels beyond level 26 to level 28 under U.S.S.G. §2D1.1(b)(1) as the result of the presence of a firearm in the house in which he lived, PSR, ¶ (25), and then decreased 3 levels to level 25 for acceptance of responsibility pursuant to U.S.S.G.§3E1.1(a) and (b), PSR ¶ (30). The Probation Office also calculated Delgado's criminal history at Category II. PSR ¶ (43). Under

the Probation Office's calculations, the then applicable advisory guideline range was 63 to 78 months.  PSR ¶ (110).

Delgado pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement.  The plea agreement, contemplating a Category I criminal history calculation rather than the Probation Office Category II calculation, provided for imprisonment for a period within the range of 57 to 71 months.[1]   Although the agreed upon range was encompassed within the PSR calculated advisory range, the government recommended and the court sentenced Delgado to a term of imprisonment of 57 months.[2]

Delgado is presently incarcerated at FCI Fairton, New Jersey, and has a projected release date of July 14, 2009.

**GOVERNING LAW**

Title 18 U.S.C. § 3582(c)(2) provides that –

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The Sentencing Commission amended the guidelines for crack cocaine, effective November 1, 2007.  The amendments altered the offense levels for cocaine base offenses downward, virtually uniformly, by 2 levels.

---

[1]   Delgado's criminal history points were the result of two juvenile offenses committed when he was 16 and more than five years prior to Delgado's federal crimes but whose disposition occurred within the five years and an adult conviction for an offensive assault – spitting.

[2]   There is a transcript of the sentencing hearing.

For example, the offense level for 5 to 20 grams of base which was at level 26 prior to November 1, 2007, is now level 24.

Amended §1B1.10 of the guidelines, taking effect on March 3, 2008, identified the cocaine base amendments, effective on November 1, 2007, as amendments which may be applied retroactively pursuant to 18 U.S.C. § 3582(c)(2).

The offense level under the amended guidelines for Delgado's offenses, before the adjustments under both U.S.S.G. §2D1.1(b)(1) and U.S.S.G.§3E1.1(a) and (b), should be offense level 24 rather than 26, and, after the adjustments, 23 rather than 25. However, because of a plainly unintended anomaly in the new drug equivalency tables at Application Note 10(D)(i) of the Commentary to §2D1.1 as they apply to determining offense levels in cases involving cocaine base and other controlled substances, Delgado's offense level does not appear to change.

Had all of Delgado's powder quantities – 11.67 grams – been counted as cocaine base and added to his cocaine base quantity – 6.24 grams – the total would be less than 18 grams. Under the pre-November 1, 2007 guidelines, 5 to 20 grams of base resulted in an offense level of 26. Under the amended guidelines, 5 to 20 grams of base produce an offense level 24. However, under the amended equivalency tables, an offense involving base and other controlled substances involves a new equivalency table and requires, first, a calculation of the offense level attributed to the base alone, Application Note 10(D)(i)(I); second, a translation of that offense level and the total amount of base into a marihuana equivalency under a new formula, Application Note 10(D)(i)(II); and, third, a calculation that combines the marihuana equivalency of the base with the marihuana equivalency of the other controlled substances and then a determination of the combined base

offense level for all the controlled substances by reference to the §2D1.1(c) drug quantity tables as they apply to marihuana quantities. Application Note 10(D)(i)(III) and (IV).

The amended drug quantity tables did not alter the offense levels assigned to the varying quantities of marihuana that triggered the levels for marihuana offenses. Those triggering marihuana quantities remained constant at each level. For example, amounts of marijuana between 100 kg and 400 kg continued to trigger offense level 26. This is not surprising, since the November 1, 2007 amendments were designed to lessen the penalties for crack offenses, not marihuana offenses. It follows, however, that if the equivalency tables were not amended, offenses involving cocaine base and other controlled substances, no matter what the relative quantities, would remain at the pre-November 1, 2007 offense levels.

The drug equivalency tables were in fact amended, presumably to ameliorate the sentences, driven by base quantities, imposed on offenses involving base and other controlled substances. The new drug equivalency tables – Application Note 10(D)(i) of the Commentary to §2D1.1 – are, however, hardly perfect.

Under the pre-November 1, 2007 drug equivalency tables one gram of base was <u>always</u> counted as 20 kg of marihuana and the marihuana quantities triggering the various offense levels corresponded perfectly with the cocaine base quantities triggering the same offense levels. For example, under the 2006 guidelines, base quantities between 5 and 20 grams produced offense level 26 and under the drug equivalency tables each gram of base translated into 20 kg of marihuana. Offense level 26 covered marihuana quantities between 100 kg and 400 kg. Five grams of base translated

into100 kg of marihuana.  Twenty grams of base translated into 400 kg of marihuana.   There was a complete symmetry in the equivalency conversion.

Under the new drug equivalency table, the quantities of marihuana attributed to a gram of cocaine base vary with the offense level assigned to the quantities of base involved in the offenses of conviction.   The attribution is not progressive, but erratic.  For example, if the offense level for the base portion of the offense is level 38, the equivalency is one gram of base to 6.7 kg of marihuana.  If the offense level for the base portion of the offense is 30, the equivalency is one gram of base to 14 kg of marihuana.  If the offense level for the base portion of the offense is 26, the equivalency is one gram of base to 5 kg of marihuana.  If the offense level for the base portion of the offense is 24, the equivalency is one gram of base to 16 kg of marihuana.

This erratic movement of base to marihuana equivalency dependent on base portion only offense levels appears to be designed to produce the same kind of symmetry in the equivalency conversion that was present in the pre-November 1, 2007 equivalency tables.  But it is hardly fully successful. For example, the new offense level 38 is matched with a 6.7 kg per base gram equivalency.  Offense level 38 applies to amounts of base at or in excess of 4.5 kg and to amounts of marihuana at or in excess of 30,000 kg. Forty five hundred grams of base (4.5 kg), at 6.7 kg per gram, converts to 30,150 kg of marihuana, a rough equivalence to the 30,000 kg of marihuana which also results in an offense level 38.[3]  Because this conversion is in

---

[3]  In order for 4,500 grams of base to be precisely equivalent to 30,000 kg of marihuana the conversion would be one gram of base to 6.666666667 kg of marihuana.  The 6.7 kg conversion factor is the result of a rounding up to one decimal place.

excess of 30,000 kg of marihuana, no defendant would be prejudiced by the rough equivalence.

New offense level 36 is also matched with a 6.7 kg per base gram equivalency. Offense level 36 applies to amounts of base between 1.5 kg and 4.5 kg and to amounts of marihuana between 10,000 kg and 30,000 kg. Fifteen hundred grams of base (1.5 kg) at 6.7 kg per gram converts to 10,050 kg of marihuana, a rough equivalence to the low end of the marihuana quantity range of the same offense level   This low end rough equivalence in excess of the marihuana low end quantity does not prejudice a defendant. However, with a 6.7 kg conversion factor, 30,000 kg of marihuana – and thus level 38 – is reached at just under 4,478 grams of base.   This is a relatively minor discrepancy, but because it is on the wrong side of the equivalence, the discrepancy could prejudice at least a few defendants.

New offense level 34 is matched with 6 kg per base gram equivalency. Offense level 34 applies to amounts of base between 500 grams and 1.5 kg and to amounts of marihuana between 3000 kg and 10,000 kg. Five hundred grams of base at 6 kg per gram converts nicely into 3,000 kg of marihuana, but 1,500 grams (1.5 kg) of base at 6 kg converts into only 9,000 kg of marihuana.   In this case, the full amount of base does not use up the corresponding full amount of marihuana. The discrepancy is on the favorable side and can not prejudice a defendant.

Real prejudice begins to emerge at base offense levels 32, 30, and 24. New offense level 32 is matched with 6.7 kg per base gram equivalency. Offense level 32 applies to amounts of base between 150 grams and 500 grams and to amounts of marihuana between 1,000 kg and 3,000 kg.  At the low end of the base range, the conversion is not prejudicial, but at the high end it is.  The full high end 3,000 kg marijuana equivalency is reached at just

under 448 grams of base, i.e., at an amount of base appreciably below the level's high end base amount.[4]

The prejudicial discrepancy increases at level 30 and is particularly egregious at level 24.  New offense level 30 is matched with 14 kg per base gram equivalency.  Offense level 30 applies to amounts of base between 50 grams and 150 grams and to amounts of marihuana between 700 kg and 1,000 kg.  At the low end of the base range, the conversion is exact and not prejudicial.[5]  At the high end, however, the possible prejudice is substantial. The full high end 1,000 kg marijuana equivalency is reached at just under 72 grams of base.  This is less than half of the high end – 150 grams – of base to which level 30 applies.   This means that an offender who is responsible for 72 grams of base [6] and any amount of any other controlled substance would fall into offense level 32, while an offender responsible for 149 grams of base is accorded level 30.

New offense level 24 is matched with 16 kg per base gram equivalency.  Offense level 24 applies to amounts of base between 5 grams and 20 grams and to amounts of marihuana between 80 kg and 100 kg. [7]  At the low end of the base range, the conversion is exact.[8]   At the high end, however, the conversion makes no sense.   In fact, the full high end 100 kg marijuana equivalency is reached at 6.25 grams of base.  This is less than one-third of the high end – 20 grams – of base to which level 24 applies.

---

[4]  Four hundred forty eight (448) grams of base at 6.7 kg per base gram converts to 3,001.6 kg of marihuana.

[5]  Fifty (50) grams of base at 14 kg per base gram converts to 700 kg of marihuana.

[6]  Seventy-two (72) grams of base at 14 per base gram converts to 1,008 kg of marihuana.

[7]  New level 26 applies to amounts of base between 20 grams and 35 grams and to amounts of marihuana between 100 kg and 400 kg.

[8]  Fifty (5) grams of base at 16 kg per base gram converts to 80 kg of marihuana.

This means that an offender who is responsible for 6.25 grams of base [9] and any amount of any other controlled substance would fall into offense level 26, while an offender responsible for 19.9 grams of base is accorded level 24.

The arbitrariness of the new drug equivalency tables would appear to be avoidable if the Sentencing Commission had only done some math. Precise, though perhaps more cumbersome, formulas are certainly available to match the equivalencies at both the low end and high ends of the respective ranges. The bad math, however, complicates Delgado's motion for a reduction in his base driven sentence.

As already noted, Delgado was held accountable for 6.24 grams of base and 11.67 grams of powder. Under the new drug quantity tables, 6.24 grams of base falls at the low end of the 5 to 20 gram range of offense level 24. However, under the new equivalency tables, his 6.24 grams of base is converted – at 16 kg marihuana per base gram – into 99.84 kg of marijuana and his 11.67 grams of powder – at 200 grams of marihuana per powder gram – is converted into slightly over 2 kg of marijuana for a combined marihuana equivalency of just above 100 kg. This would place Delgado into offense level 26, a placement which is undeserved and senseless. Delgado's base quantities and powder quantities taken together are less than 20 grams and thus his offense level would be 24 even if we were to count his powder as if it were base.

A literal application of the new equivalency tables would apparently preclude Delgado's motion for a reduction because 18 U.S.C. § 3582(c)(2) applies only to defendants who have "been sentenced to a term of

---

[9] Six point two-five (6.25) grams of base at 16 per base gram converts to 100 kg of marihuana.

imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)."   A literal application of the new equivalency tables would not alter Delgado's offense level or his sentencing range.   But this is an irrational result in this case.  Only the presence of a small amount of powder elevates Delgado's offenses to a current level 26.  If the powder – all 11.67 grams – had been cocaine base, the total amount involved – 6.24 grams plus 11.67 grams or less than 18 grams – would have resulted in a current offense level 24.  The presence of the powder, carrying a marihuana equivalent that is a fraction of that set for cocaine base, obliterates any benefit from the new guideline.

**DELGADO IS ELIGIBLE FOR A SENTENCE REDUCTION**

The legal argument that follows is an argument – virtually word for word – fashioned by Amy Baron-Evans, National Federal Defender Resource Counsel.[10]

> **A.    The Policy Statement – §1B1.10 – And the Equivalency Table, Insofar As they Would Bar Retroactive Relief When One of the Arbitrary Equivalencies Eliminates the Reduction In the Base offense Level, Are Invalid Because They Violate Their Enabling Statutes and Are Inconsistent With the Amended Guideline**

At least three courts have identified the problems associated with the new equivalency table and have declined to follow it.  *See United States v. Watkins*, 531 F.Supp.2d 943 (E.D. Tenn. 2008); *United States v. Horta,* 534 F.Supp.2d 114 (D. Me. 2008); *United States v. Molina*, slip op., 2008 WL 544703 (E.D.N.Y. Feb. 28, 2008).   In these cases, however, the defendants were being sentenced under the new guidelines for the first time and the

---

[10] The article, "A Simple Solution to the Math Problem Produced By the New Crack-To-Marijuana Table In Cases Involving Retroactive Application Of the Crack Amendment," may be found at http://fd.org/odstb_CrackCocaine.htm.

courts were plainly free to disregard the "advisory" guideline quantity table that would produce an anomalous result under the *Booker* line of cases.  At least one court, however, has allowed a motion for a sentence reduction under 18 U.S.C. § 3582(c) where the equivalency table issue arose,  *See United States v. Commer*,  No. 2: 99-119 (N.D. Ind. March 3, 2008).  Copies of the Order and related motion are attached as Exhibit 1.[11]

When a policy statement – such as §1B1.10, or commentary to a guideline – such as the equivalency table set forth in §2D1.1, Application Note 10(D)(i)(II)) – is inconsistent with a statute, the statute trumps.  *See United States v. LaBonte,* 520 U.S. 751, 757-58 (1997); *Neal v. United States,* 516 U.S. 284, 292-95 (1996); *Stinson v. United States*, 508 U.S. 36, 38, 44, 45 (1993).

Title 28 U.S.C. § 994(a)(2)(c) requires that any policy statement implementing 18 U.S.C. § 3582(c)(2) be consistent with 18 U.S.C. § 3553(a)(2) and all other pertinent federal statutes.  Title 28 U.S.C. § 991(b)(1) requires that all policy statements assure the meeting of the purposes of sentencing as set forth in § 3553(a)(2), provide certainty and fairness in meeting those purposes,  avoid unwarranted sentencing disparities, and reflect advancement in knowledge of human behavior.

The policy statement, U.S.S.G. §1B1.10(a)(1)(B), insofar as it would deny relief to Delgado by eliminating a sentence reduction through the arbitrary, avoidable, and inequitable equivalencies in the table in § 2D1.1, Application Note 10(D)(i)(II), is inconsistent with these statutes.  The table, as it applies to Delgado and as it applies in many though not all multi-drug cases, is contrary to reason, contrary to empirical evidence, undermines the §

---

[11]   As reflected in the Exhibit 1 attachment, the issue is set forth in the motion and not specifically addressed in the order allowing the motion.

3553(a)(2) purposes, creates unwarranted disparities and manifest unfairness. As Justice Breyer might say, the table (and the policy statement's purported enforcement of it) is not even a "rough approximation" of compliance with § 3553(a)(2) because it is not based on an "empirical approach," is not based on consultation with the criminal justice community, and has not yet been revised in the face of evidence that it is irrational. *See Rita v. United States*, 127 S.Ct. 2456, 2464-65 (2007).

Simply put, commentary is not authoritative if it is "inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson, supra*, 508 U.S. at 38. "If . . . commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." *Id.* at 43

**B.    In the Alternative, the Policy Statement Is Merely Advisory and Should Not Be Followed Because the Equivalency Table Is Not Empirically Based and Reflects Unsound Judgment.**

Although this court can decide that Delgado is eligible for a reduction in his sentence based on the statutory reading reflected above, there is an alternative basis. In light of *United States v. Booker,* 543 U.S. 220 (2005), the guidelines and policy statements are advisory.   U.S.S.G. §1B1.10 is advisory, just like any other provision of the guidelines.  *See United States v. Hicks*, 472 F.3d 1167, 1172-73 (9th Cir. 2007; *United States v. Jones*, 2007 WL 2703122 (D. Kan. Sept. 17, 2007); *United States v. Forty Estremera*, 498 F.Supp.2d 468, 471-72 (D. P.R. 2007); *United States v. Polanco*, 2008 WL 144825, 2 (S.D.N.Y Jan. 15, 2008).   This court should, therefore, find that the arbitrary equivalencies in the new table and the limitation in

§1B1.10(a)(2)(B)[12] "fail[] properly to reflect the § 3553(a) considerations," and thus "reflect an unsound judgment." *Rita, supra*, at 2468. Because the new equivalency table is not the product of "empirical data and national experience," the court is free to reject the policy statement's advice to deny relief when the erratic equivalencies are the cause of raising the guideline range. *Kimbrough v. United States*, 128 S.Ct. 558, 575 (2007); *Gall v. United States*, 128 S.Ct. 586, 594 n.2 (2007).

    **C.**    **The Court Has Jurisdiction to Determine that Delgado Is Eligible For A Reduction Despite the apparent Preclusive Language of 18 U.S.C. § 3582(c)(2).**

Section 3582(c)(2) is one exception to the statutory rule that the court may not modify a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). One requirement for *granting* a sentence reduction is that it be "consistent with applicable policy statements" issued by the Commission. According to the Commission's particular policy statement regarding the retroactive application of the November 2007 crack amendments, an amendment that "does not have the effect of lowering the defendant's applicable guideline range is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2)." *See* U.S.S.G. §1B1.10(a)(1)(B).

Despite the apparent mandatory nature of the limitation expressed in §1B1.10(a)(1)(B), it is certainly not jurisdictional. "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). *See also, United States v. Mineworkers*, 330 U.S. 258, 291 (1947) (the courts alone decide whether

---

[12]  §1B1.10(a)(2)(B) provides that there should be no reduction if the November 2007 crack amendments "do not have the effect of lowering the defendant's applicable guideline range."

they have jurisdiction).  Moreover, only the courts, and surely not the Commission,  have the power under our constitutional structure to interpret statutes upon which jurisdiction depends.  "It is emphatically the province and duty of the judicial department to say what the law is.  Those who apply the rule to particular cases must of necessity expound and interpret that rule.  It two laws conflict with each other, the courts must decide on the operation of each."  *Marbury v. Madison*, 1 Cranch 137, 177 (1803).

It is for the court to decide whether the Commission's policy statement – §1B1.10(a)(1)(B) – purporting to preclude a reduction for Delgado based on the operation of the plainly flawed equivalency table – Application Note 10(D)(i0(II) to §2D1.1 – conflicts with the enabling statutes – 28 U.S.C. §§ 994(a)(2)(C) and 991(b)(1) – and if so, to decide on the operation of each.  If the policy statement violates the enabling statutes, it is inoperative.  In the words of 18 U.S.C. § 3562(c), it is not an "*applicable* policy statement."  (Emphasis added).  Alternatively, the court has jurisdiction to determine whether the policy statement and the commentary are merely advisory in light of the Supreme Court's interpretation of 18 U.S.C. 3553(a) and (b) in *Booker* and its progeny.

The policy statement regarding retroactive application of the November 2007 crack amendments is nothing more than an instruction for the court in determining the merits of whether to grant a sentence reduction.  For the reasons set forth above, the instruction should not be followed when the equivalency table is arbitrary and irrational and has the effect of eliminating a reduction that plainly should be available.

**THE REDUCTION AVAILABLE TO DELGADO**

As already noted, page 2, *supra*, when Delgado was sentenced in October of 2006, the offense level attached to his base and powder offenses was level 26.  The offense level was increased two levels beyond level 26 to level 28 under U.S.S.G. §2D1.1(b)(1) as the result of the presence of a firearm in the house in which he lived, and then decreased 3 levels to level 25 for acceptance of responsibility pursuant to U.S.S.G.§3E1.1(a) and (b). For the reasons argued at some length already, the offense level attached to Delgado's base and powder offenses under the amended guidelines should be level 24 rather than level 26.  Adding the adjustment for the presence of a firearm and deducting the adjustment for acceptance of responsibility, Delgado's post-November 2007 guideline offense level would be offense level 23.

When Delgado was sentenced in 2006, his advisory guideline sentencing range at offense level 25 and criminal history Category II was 63 to 78 months.  PSR ¶ (110).  Delgado pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement.  The plea agreement, contemplating a Category I criminal history calculation rather than the Probation Office category II calculation, provided for imprisonment for a period within the range of 57 to 71 months.   Although the agreed upon range was encompassed within the PSR calculated advisory range, the government recommended and the court sentenced Delgado to a term of imprisonment of 57 months.

Under the amended guidelines, at offense level 23 and criminal history category II, Delgado's guidelines sentencing range is reduced to 51 to 63 months of imprisonment.   But since Delgado received a sentence below his advisory guideline range, he is eligible for a comparably reduced sentence under the provisions of U.S.S.G. §1B.1.10(b)(2)(B) which provides

that "If the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range . . . may be appropriate."

Delgado submits that an appropriate reduction in his case is approximately five (5) months less than the low end of his current guideline range, i.e., 46 months imprisonment.

Delgado is incarcerated at FCI Fairton, New Jersey, and has a projected release date of July 14, 2009.  If the court finds Delgado eligible for a reduced sentence, counsel does not currently anticipate a necessity for his presence at re-sentencing.

By his attorney,

s/ Michael J. Liston

_____

Michael J. Liston BB0# 301760
2 Park Plaza, Suite 610
Boston, MA  02116
(617) 426-2281

Dated:  April 3, 2008

### CERTIFICATE OF SERVICE

I, Michael J. Liston, do hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date, April 3, 2008.

s/  Michael J. Liston

_____

Michael J.  Liston

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

UNITED STATES OF AMERICA,    )
                         )
        v.            )      No. 2:99-CR-119
                         )
TYRAN COMER            )

## ORDER REGARDING MOTION FOR SENTENCE REDUCTION
## PURSUANT TO 18 U.S.C. § 3582(C)(2)

Upon motion of the defendant under 18 U.S.C. § 3582(c)(2) for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u), and having considered such motion, which is unopposed, **IT IS ORDERED** that the motion is **GRANTED** and the defendant's previously imposed sentence of imprisonment (as reflected in the last judgment issued) of 135 months **is reduced to time served.**

**I.  COURT DETERMINATION OF GUIDELINE RANGE** (Prior to any departures)

Previous Offense Level: 31      Amended Offense Level: 29
Criminal History Category: III    Criminal History Category: III
Previous Guideline Range: 135-168 mo.    Amended Guideline Range: 108-135 mo.

**II. SENTENCE RELATIVE TO AMENDED GUIDELINE RANGE**

The reduced sentence is within the amended guideline range.

**III.  ADDITIONAL COMMENTS**

N/A

Except as provided above, all provisions of the judgment dated March 10, 2000,

shall remain in effect.

IT IS SO ORDERED.

ORDER DATE: **March 3, 2008**          /s/RUDY LOZANO, Judge
**EFFECTIVE DATE: March 13, 2008**     United States District Court

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA**

       **Plaintiff,**

**v.**                             **CASE NUMBER:  2:99 CR 119**

**TYRAN COMER**

       **Defendant.**

**MOTION FOR RETROACTIVE APPLICATION OF SENTENCING GUIDELINES**
**TO CRACK COCAINE OFFENSE**

Comes now the petitioner, Tyran Comer, by counsel, and petitions the Court for a

modification of his sentence.  In support of the proposed sentence modification, the

petitioner would show the following:

1.     On January 27, 2000, the petitioner was sentenced to 135 months

        imprisonment. (DR #40).

2.     Petitioner's sentence was based upon the United States Sentencing

        Guidelines for crack cocaine that were in effect on that date. The petitioner

        was sentenced prior to *United States v. Booker*, 543 U.S. 220 (2005), after

        which the guidelines became advisory rather than mandatory.  At the time

        of his sentencing, the petitioner's total offense level was 31 and the

        petitioner's criminal history category was III.  The petitioner's previous

        guideline range was 135 to 168 months.  The petitioner was sentenced at

        the low end of the then-existing guidelines.

3.     Under the sentencing guidelines effective November 1, 2007, the

        petitioner's criminal history category would still be category III, but his

offense level should be 29. When promulgating the crack amendment, the United States Sentencing Commission created a mathematical anomaly in some cases where crack cocaine and marijuana were present and factored into the total offense level. (See Exhibit 1 - article entitled "Faulty Math in New Cocaine Base Equivalency Table" dated January 18, 2008). As the District Court is fully aware, the sentencing guidelines require a conversion to a marijuana quantity when multiple drugs exist. (See Sentencing Guideline 2D1.1, Application Note 10(D) ). As reflected in the defendant's Presentence Report, the defendant's base offense level was calculated by combining both crack cocaine and a relatively small amount of marijuana. Despite the commission's desire to reduce defendants' sentences involving crack cocaine offenses, the commission clearly failed to realize that mathematical errors existed during the conversion from crack cocaine to marijuana drug quantities. This unintentional discrepancy exists in this case.

4.     Since the Sentencing Commission clearly did not intend to disallow relief in cases like the defendant's where, despite a small amount of marijuana, the conversion from crack cocaine to marijuana precludes a two level reduction. Under these circumstances, the District Court should exercise its discretion under *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007), and reduce the defendant's total offense level by two levels.

2

5.   If granted a two level reduction consistent with the clear intention of the
United States Sentencing Commission when amending Sentencing
Guideline 2D1.1, the defendant's modified guideline range would be
between 108 to 135 months imprisonment.  Since the defendant was
sentenced to the low end of the then existing guidelines at the time of his
sentencing hearing, the defendant should similarly be sentenced to the
low end of the guideline range which would be 108 month imprisonment.

6.   According to the Federal Bureau of Prisons, the petitioner's projected
release date is May 6, 2009.  Since an application of the amended
guidelines would reduce the petitioner's sentence by 27 months, the
petitioner would be eligible for <u>immediate</u> release on March 3, 2008.

For all the foregoing reasons, petitioner Tyran Comer respectfully requests that
the Court modify his sentence immediately so that it reflects the sentencing guidelines
effective November 1, 2007.  Petitioner also requests that he be sentenced to the low
end of the November 1, 2007 guidelines consistent with his previous sentence, that his
previous sentence be reduced by 27 months, and that a modified sentence of
imprisonment of 108 months be imposed.

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By:   <u>s/ Jerome T. Flynn</u>
Jerome T. Flynn
31 East Sibley Street
Hammond, IN   46320
Phone:  (219) 937-8020
Fax:  (219) 937-8021

3

## CERTIFICATE OF SERVICE

I hereby certify that, on  February 19, 2008 , I electronically filed the foregoing with the Clerk of the Court using the CM/CM/ECF system which sent notification of such filing to the following:

> David E Hollar
> david.hollar@usdoj.gov
>
> Randall M Stewart
> Randall.Stewart@usdoj.gov

and I hereby certify that I have mailed the document by U.S. Postal Service to the following non CM/CM/ECF participants:

 s/ Jerome T. Flynn